UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

___

MARCUS HANSERD,

        Plaintiff,                      Case No. 1:12-cv-580

v.                                                 Honorable Janet T. Neff

UNKNOWN VASHAW et al.,

        Defendants.

_____/

## **OPINION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff will pay the initial partial filing fee as funds become available to him. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Also before the Court is a motion to amend the complaint (docket #6), which merely alters the relief that Plaintiff requests. Plaintiff's motion will be granted, and applying the foregoing standards, his action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Marcus Hanserd presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP), though the events giving rise to his complaint occurred while he was incarcerated at the Carson City Correctional Facility (DRF) and the St. Louis Correctional Facility (SLF). Plaintiff names the following employees of DRF as Defendants: Lieutenant (unknown) Vashaw, Inspector M. Christansen, Assistant Deputy Warden (ADW) T. Triewiler, and Resident Unit Manager (RUM) (unknown) Beecher. In addition, he sues the following employees of SLF: Warden Steven Rivard, ADW K. Best-Washington, ADW (unknown) McCulluck, RUM (unknown) Peet, and Assistant Resident Unit Supervisor (ARUS) (unknown) Jacob, ARUS (unknown) William, Inspector (unknown) Patrick, Psychologist (unknown) Suarez, and ADW (unknown) Dingledy.

In November 2004, Plaintiff was sentenced to 15 to 45 years of imprisonment for armed robbery, Mich. Comp. Laws § 750.529.[1] According to the complaint, on March 1, 2010, while Plaintiff was incarcerated at DRF, Lt. Vashaw notified Plaintiff that he might be placed in administrative segregation pending the outcome of a felony investigation by the Michigan state police. On March 5, 2010, Plaintiff received a hearing before the prison's security classification committee. Defendants Vashaw, Christansen, Triewiler, and Beecher were present at the hearing, and they decided to confine Plaintiff in administrative segregation because of the felony investigation.

On March 11, 2010, Plaintiff was transferred from DRF to SLF, where Defendants Rivard, Best-Washington, Dingledy, McCulluck, Peet, Patrick, Jacob, William, and Suarez reviewed

---

[1] *See* Plaintiff's MDOC profile at http://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=440115 (accessed Aug. 23, 2012).

Plaintiff's confinement in administrative segregation. They decided to continue that confinement because of the police investigation.

On January 29, 2011, Plaintiff sent a prisoner kite to Inspector Patrick inquiring about his continued segregation. Patrick responded with a written note stating, "I AM NOT KEEPING YOU IN SEG. THAT DECISION IS MADE BETWEEN THE MSP, WARDEN & POLICY. NOT ME." (Ex. B to Compl., docket #1-1, Page ID#11.) Plaintiff could not find a policy or rule supporting his continued segregation, so he sent a letter to Warden Rivard on March 4, 2011. Plaintiff did not receive a response to the letter.

According to his MDOC profile, Plaintiff was found guilty of eight additional criminal charges in 2011, including: carrying a weapon with unlawful intent, Mich. Comp. Laws § 750.226; felon-in-possession, Mich. Comp. Laws § 750.224f; car jacking, Mich. Comp. Laws § 750.529a; first-degree, premeditated murder, Mich. Comp. Laws § 750.316(1)(a); and four counts of felony-firearm, Mich. Comp. Laws § 750.227b. The state court sentenced Plaintiff on June 30, 2011. For the murder conviction, Plaintiff received a life sentence.

On July 11, 2011, Plaintiff filed a prison grievance complaining about his continued segregation, arguing that it was unnecessary because the police investigation had ended on March 1, 2010, when Plaintiff was arraigned on the felony charges. The grievance was rejected for raising a non-grievable issue. After Plaintiff filed several more grievances, he was placed on modified grievance access.

Plaintiff's confinement in administrative segregation ended on July 21, 2011, after he was transferred to MBP. During his time in segregation, the prison security classification committee reviewed his status approximately twenty times, and in each case it noted the police

investigation and recommended that Plaintiff remain in segregation. Attached as exhibits to the complaint are sixteen reports prepared by MDOC staff in connection with their review of Plaintiff's administrative segregation. (*See* MDOC Segregation Behavior Reviews, docket #3-3.)[2] The reports include comments from the prison's housing unit staff, who consistently note that Plaintiff had no problems with prison staff or other prisoners, he kept himself and his cell clean, and he had not committed any misconducts since September 2009.[3] (*Id.*) In addition, the housing unit staff consistently rate Plaintiff's "potential to honor the trust implicit in less restrictive confinement" as "medium" or "high." (*Id.*) Some of the reports are signed by members of the security classification committee and the prison warden. The latter reports include written comments stating additional reasons for continuing Plaintiff's segregation. In August 2010, the committee concluded that Plaintiff "needs to display [a] longer period of positive behavior." (*Id.* at Page ID#63.) In October 2010, March 2011, and June 2011, the committee decided that Plaintiff needs a "further period of adjustment." (*Id.* at Page ID##65, 67, 69, 70.) In January, April and June 2011, the committee noted that the "nature" of the investigation or charges against Plaintiff is a concern. (*Id.* at Page ID##61, 66, 70.)

Plaintiff contends that his 17-month confinement in segregation constituted cruel and unusual punishment under the Eighth Amendment, and that Defendants violated his right to due process under the Fifth and Fourteenth Amendments and his right to equal protection under the

---

[2]The reports indicate that Plaintiff's segregation was reviewed on the following dates: March 17 and 24, 2010; April 7, 14, 21, and 28, 2010; June 23, 2010; August 18, 2010; September 15, 2010; October 13, 2010; December 8, 2010; January 5, 2011; March 30, 2011; May 4, 2011; June 1, 2011; and June 29, 2011. (*See* docket #3-3.)

[3]That misconduct is identified as an "014" (*see, e.g.,* docket #3-3, Page ID#36), which means that it involved "fighting," i.e. "a [p]hysical confrontation between two or more persons, including a swing and miss, done in anger or with intent to injure." MDOC Policy Directive 03.03.105B (effective Jan. 1, 2007).

Fourteenth Amendment. As relief, Plaintiff seeks damages. In a motion to amend his complaint, he clarifies that he seeks nominal and punitive damages as well as compensatory damages of $175 for each day that he was held in segregation. (*See* Mot. to Amend Compl., docket #6.)

**Discussion**

I.  Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and

1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     Eighth Amendment

The Eighth Amendment prohibits punishments that are not only physically barbaric, but also those which are incompatible with "the evolving standards of decency that mark the progress of a maturing society," or which "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102-103(1976). To establish an Eighth Amendment claim, the prisoner must show that he was deprived of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Restrictions that are restrictive or even harsh, but are not cruel and unusual under contemporary standards, are not unconstitutional. *Id.* Thus, federal courts may not intervene to remedy conditions that are merely unpleasant or undesirable.

Placement in segregation is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347; *see also Jones v. Waller*, No. 98-5739, 1999 WL 313893, at *2 (6th Cir. May 4, 1999). Although Plaintiff undoubtedly lost certain privileges as a result of his administrative segregation, he does not allege that he was denied basic human needs and requirements. The Sixth Circuit has held that without a showing that basic human needs were not

met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, No. 09-6283, 2011 WL 2579779, at *5 (6th Cir. June 29, 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008). Moreover, Plaintiff cannot bring an Eighth Amendment claim for emotional or mental damages because he does not allege a physical injury. *See* 42 U. S.C. §1997e(e); *see also Hudson*, 503 U.S. at 5; *Harden-Bey*, 524 F.3d at 795. Thus, Plaintiff fails to state an Eighth Amendment claim.

### B.  Due Process

"[P]rocedural due process prohibits arbitrary and unfair deprivations of protected life, liberty, or property interests without procedural safeguards." *Howard v. Grinage*, 82 F.3d 1343, 1349-50 (6th Cir. 1996) (citing *Daniels v. Williams*, 474 U.S. 327 (1986)). The Due Process Clause does not protect every change in a prisoner's conditions of confinement. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when a sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486–87. Plaintiff does not allege that his segregation had an effect on the duration of his sentence; thus, at issue is whether it imposed an atypical and significant hardship. "[C]ourts will consider the nature and duration of a stay in segregation in determining whether it imposes an 'atypical and significant hardship.'" *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (citing *Harden-Bey*, 524 F.3d at 793).

Plaintiff's complaint is devoid of details regarding the *nature* of his segregation,

except that it was what the MDOC refers to as administrative segregation. *Cf. Joseph*, 410 F. App'x at 869 (prisoner failed to state a due process claim where he failed to make "any allegations about the conditions of [his confinement in] the security level IV prison to suggest that it imposes an atypical and significant hardship"). "Administrative segregation 'is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration.'" *Id.* at 867-68 (quoting *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)). "[T]he Sixth Circuit has often held that administrative segregation alone does not involve an 'atypical and significant' hardship implicating a protected liberty interest." *Id.* at 868 (citing cases). Instead, it implicates a liberty interest only in "extreme circumstances," such as when its duration is indefinite, *id.* (citing *Harden–Bey*, 524 F.3d at 795), or lasts for an extended period of time, *see Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (eight years in segregation implicates a liberty interest). *Cf. Jones v. Baker*, 155 F.3d 810, 834 (6th Cir. 1998) (30-month period of segregation during an investigation of the plaintiff's role in the killing of a prison officer *did not* implicate a liberty interest). Plaintiff's confinement in segregation was far shorter than what was recognized as atypical in *Harden-Bey* and *Harris*. Moreover, it was much shorter than the 30-month period of segregation in *Jones*, which the Sixth Circuit concluded was *not* atypical. Thus, it appears that Plaintiff's confinement in segregation did not rise to the level of an atypical and significant hardship. Consequently, it did not implicate a liberty interest.

Moreover, even assuming that Plaintiff's confinement in segregation implicated a liberty interest, he does not state a claim because it is clear that he received all the process to which he was entitled. *See Zinermon v. Burch*, 494 U.S. 113, 126 (1990) (noting that a due process claim "is not complete unless . . . the State fail[ed] to provide due process"). "The Supreme Court has

indicated that '[p]rison officials must engage in some sort of periodic review'" of confinement in segregation. *Harris*, 465 F. App'x at 484 (quoting *Hewitt*, 459 U.S. at 477 n.9). "'This review will not necessarily require that prison officials permit the submission of any additional evidence or statements.'" *Id.* (quoting *Hewitt*, 459 U.S. at 477 n.9). "However, the decision to continue confinement must be supported by 'some evidence.'" *Id.* (quoting *Superintendent v. Hill*, 472 U.S. 445, 454 (1985)). "This requirement balances the procedural rights of prisoner against the need of prison officials to have freedom to operate their facilities on a day-to-day basis." *Id.*

As is clear from the complaint and its exhibits, Plaintiff did receive periodic review of his confinement in segregation; he alleges that he received twenty reviews over the course of seventeen months. Those reviews consisted of an evaluation by housing staff, an assessment by the security classification committee that included an interview where Plaintiff chose to participate, and approval by the warden of the facility. (*See* docket #3-3.) The crux of Plaintiff's claim, however, is that the reviews were meaningless because they merely repeated the same reason for continuing his segregation–an ongoing police investigation–even though that investigation had ceased. In other words, Plaintiff claims that Defendants' decisions to continue his segregation were not supported by sufficient evidence. On that point, he is mistaken.

First, Plaintiff acknowledges that there was a police investigation, and his criminal record indicates that the investigation ultimately led to criminal charges and a conviction for several serious felonies, including first-degree murder. Plaintiff contends that the state's investigation ended when he was arraigned and charged with those crimes, but an arraignment does not necessarily mean that the state has ended its investigation; it merely means that it has decided to pursue charges. An investigation could conceivably continue until the charges are resolved.

Furthermore, even if the investigation did end in March 2010, the charges against him remained pending for much of his time in segregation. As indicated, Plaintiff was convicted of those charges in the spring of 2011, he received a sentence at the end of June 2011, and he was released from segregation a few weeks thereafter. In *Jones*, the Sixth Circuit concluded that it was not unreasonable for prison officials to assign a prisoner to segregation for thirty months "while his or her participation in violent conduct inside the prison walls is investigated." *Jones*, 155 F.3d at 812. Similarly, it was not unreasonable for Defendants to conclude that Plaintiff should be confined in more restrictive conditions while his participation in violent conduct *outside* the prison was fully investigated and the charges against him were resolved. A prisoner subject to pending criminal charges may be a greater flight risk than other prisoners, or may need to be confined in more restrictive conditions to prevent the prisoner from interfering with the investigation and/or prosecution of the case. Moreover, as the security classification committee noted in January, April and June 2011, the specific nature of the charges against Plaintiff raised a security concern. It would not be unreasonable for prison officials to conclude that particularly serious new charges against a prisoner, like those in Plaintiff's case, warrant more restrictive conditions of confinement, as the charges may indicate that the prisoner is capable of more dangerous conduct than his recent behavior in prison or his existing convictions would suggest. Indeed, after Plaintiff was convicted of the new charges, he was moved to a higher security level. Both SLF and DRF, where Plaintiff was incarcerated for most of his time in segregation, hold prisoners assigned to security level IV or lower. MBP, where Plaintiff was incarcerated when he was released from segregation, is a maximum security facility, and his MDOC profile indicates that he is now confined at level V, the most secure level of confinement in the MDOC apart from administrative segregation.

Finally, the Court notes that Defendants apparently decided to continue his confinement in segregation, in part, because of his behavior in prison. On several occasions the security classification committee determined that Plaintiff needed a longer period of adjustment or needed to display a longer period of positive behavior. Indeed, the reports indicate that Plaintiff often refused to participate in an interview or sign the report (docket #3-3, Page ID##61, 63, 64, 65, 68, 69, 70), and/or made comments suggesting that the security classification reviews were meaningless (*id.* at Page ID##61, 63, 64, 69). Plaintiff does not expressly challenge the committee's determinations in this regard.

In sum, Plaintiff's 17-month confinement in segregation did not implicate a liberty interest, but even if it did, Plaintiff received the process to which he was entitled. Defendants regularly reviewed his confinement in segregation, and their decisions to continue that confinement were supported by some evidence–namely, an ongoing felony investigation and charges related thereto. Plaintiff may disagree with Defendants' conclusion that his circumstances warranted continued segregation, but that disagreement does not mean that the process he received was constitutionally deficient. *See Harris*, 465 F. App'x at 486. Accordingly, he fails to state a due process claim.

### C.  Equal Protection

The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Plaintiff does not allege that he is a member of a suspect class; "prisoners are not considered a

suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir. 1998). In addition, Plaintiff does not have a fundamental right to avoid administrative segregation. *Williams v. Vidor*, 67 F. App'x 857, 860 (6th Cir. 2003).

Because neither a suspect class nor a fundamental right is at issue, the rational basis review standard applies. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)). To prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Plaintiff's claim is largely conclusory. There is no indication that Defendants treated Plaintiff differently from similarly-situated inmates. Moreover, as indicated with respect to Plaintiff's due-process claim, the decision to continue his confinement in segregation was not arbitrary or lacking in a rational basis. Thus, Plaintiff fails to state a viable equal-protection claim.

### **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's motion to amend the complaint (docket #6) will granted, and the action

will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

An order and judgment consistent with this Opinion will be entered.


Dated:  September 14, 2012                /s/ Janet T. Neff
                                          Janet T. Neff
                                          United States District Judge